UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
CARL CAESAR,

               Plaintiff,             <u>MEMORANDUM & ORDER</u>
                                            22-CV-0841(JS)(ST)

   -against-

VILLAGE OF MINEOLA, VILLAGE OF MINEOLA
PARKS DEPARTMENT, AND THOMAS RINI,

               Defendants.
----------------------------------x

For Plaintiff:    Carl Caesar, <u>Pro Se</u>
                111-42 167th Street
                Jamaica, New York  11433

For Defendants:   Brian S. Sokoloff, Esq.
                Chelsea Ella Weisbord, Esq.
                Sokoloff Stern LLP
                179 Westbury Avenue
                Carle Place, New York  11514

SEYBERT, District Judge:

        <u>Pro se</u> plaintiff Carl Caesar ("Plaintiff") commenced this action against the Village of Mineola ("the Village"), the Village of Mineola's Parks Department ("Parks Department"), and Thomas Rini ("Mr. Rini,") (collectively, the "Defendants"). Plaintiff's Amended Complaint purports to allege discrimination claims based upon Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e <u>et seq.</u>, and New York Executive Law § 296 <u>et seq.</u> ("NYHRL"). (<u>See</u> <u>generally</u> Am. Compl., ECF No. 16.)

        Presently before the Court is Defendants' motion for summary judgment (the "Motion"). (<u>See</u> Motion, ECF No. 42.)  For

the reasons that follow, Defendants' Motion is GRANTED, which disposes of all federal claims in this case. Consequently, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

<u>BACKGROUND</u>

Before discussing the factual record and the merits of Defendants' Motion, the Court first addresses the effect of Plaintiff's repeated noncompliance with both Local Rule 56.1 of the United States District Courts of the Southern and Eastern Districts ("Local Rule 56.1") and the Court's Orders in this case.

I.   <u>Procedural History</u>

On September 26, 2019, Plaintiff served a notice of claim on the Village asserting claims of racial discrimination, hostile work environment, and retaliation.  (Ex. C, ECF No. 42-4.)  On March 9, 2020, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") (Ex. D, ECF No. 42-5), and on December 23, 2021, Plaintiff received a right to sue letter. (Am. Compl. ¶¶ 5, 6.)

On February 15, 2022, represented by Counsel, Plaintiff filed his original Complaint in this action alleging discrimination, retaliation, and hostile work environment claims pursuant to Title VII and the NYHRL.  (Compl., ECF No. 1.)  On October 5, 2022, the Court denied Defendants' letter motion (ECF No. 14) seeking permission to file a motion to dismiss, and granted

2

Plaintiff leave to file an amended complaint.  (Oct. 5, 2022, Elec. ORDER.)  Plaintiff filed his Amended Complaint on November 4, 2022.  (ECF No. 16.)  On November 11, 2022, Defendants renewed their prior letter motion seeking permission to file a motion to dismiss.  (ECF No. 17.)  On February 9, 2023, the Court granted Plaintiff's Counsel's motion to withdraw as attorney (see ECF No. 20); thereafter, on April 12, 2023, Plaintiff reported he would proceed pro se.  (See ECF No. 23.)

On May 17, 2023, Defendants filed a pre-motion conference letter seeking permission to file a motion for summary judgment.  (See ECF No. 24.)  Plaintiff did not respond to that letter motion; thereafter, the Court proceeded to set a briefing schedule on Defendants' anticipated summary judgment motion.  (See Sept. 19, 2023 Elec. ORDER.)  Pursuant to that briefing schedule, Defendants served Plaintiff with their moving papers on October 20, 2023. (See ECF No. 27.)  Plaintiff failed to serve any opposing papers.  (See Case Docket, in toto.)

On December 8, 2023, Defendants filed their Motion.  (See ECF No. 28.)  That same day, Defendants served and filed a letter requesting the Motion be deemed fully submitted and unopposed. (See ECF No. 29.)  On December 11, 2023, the Court deferred ruling on Defendants' request because it was "unclear whether Defendants [] complied with EDNY Local Rule 56.2" which "requires a Defendant . . . to 'serve and file as a separate document, together with the

3

papers in support of the motion,' a Notice to Pro Se Litigant along with the full texts of Fed. R. Civ. P. 56 and Local Civil Rule 56.1," which non-compliance "is grounds for denying the underlying [M]otion." (Dec. 11, 2023 Elec. ORDER.)  On December 21, 2023, Defendants filed an affidavit of service of the Local Rule 56.2 Notice to Pro Se litigant. (See ECF No. 30.)  Given Defendants' failure to serve the requisite Local Rule 56.2 Notice prior to December 21, 2023, the Court denied Defendants' request to consider the Motion fully briefed; instead, it issued a new briefing schedule affording Plaintiff until January 22, 2024 to serve his Opposition to the Motion on Defendants. (See Dec. 21, 2023 Elec. ORDER.)  Notwithstanding service of that Order upon Plaintiff (see Aff. of Serv., ECF No. 31), Plaintiff again failed to serve an Opposition to the Motion. (See Case Docket, in toto.)

On February 12, 2024, Defendants served and filed a Renewal Letter requesting the Court either (1) deem their Motion fully briefed and unopposed or (2) alternatively, dismiss the action with prejudice for failure to prosecute and comply with Court orders. (See Renewal Letter, ECF No. 32.)  Plaintiff did not file any response to Defendants' Renewal Letter.[1]  (See Case

---

[1] Defendants noted in their Renewal Letter that on December 21, 2023, they re-served Plaintiff with a copy of their Motion papers and referenced case law, along with a Local Rule 56.2 Notice, via email, regular mail, and certified mail. (See Renewal Letter at 2 n.1.)  However, Plaintiff refused to accept the mailings, which

Docket, in toto.)  By Order to Show Cause ("OSC"), on August 1, 2024, the Court put Plaintiff on notice that it deemed Defendants' Renewal Letter as a motion to dismiss for failure to prosecute (hereafter, the "Dismissal Motion"), and provided Plaintiff one final opportunity to oppose the Dismissal Motion.  (OSC, ECF No. 34.)  The OSC provided Plaintiff until August 16, 2024 to oppose Defendants' Dismissal Motion for Plaintiff's failure to prosecute and warned Plaintiff that "[f]ailure to timely respond to Defendants' Dismissal Motion: (1) will result in the Court ruling upon said Dismissal Motion as unopposed; and (2) may result in dismissal of this case without further notice for failure to prosecute." (Id. at 6.)  On August 1, 2024, Defendants served the OSC on Plaintiff by first class mail, overnight mail, certified mail, and email.  (See ECF No. 35.)

By letter dated August 15, 2024, Plaintiff timely responded to the OSC; he asked the Court not to dismiss his case, stating he had "endured various incidents of discrimination and harassment" and had "dates, times and images which [he] would like the opportunity to share with the courts."  (Pl.'s OSC Response, ECF No. 36.)  Plaintiff enumerated three examples "of the harassment and discriminatory behavior [he] was subject to over the years," purportedly by three different coworkers.  (See id.)

---

were "returned to sender" and deemed "undeliverable." (Id.)  There was no indication that service by email was not effectuated.

The first incident purportedly occurred in 2016 or 2017 when a coworker stated he was going to hang Plaintiff from a tree (hereafter, the "Hanging Comment Incident"). (See id.) The second incident purported occurred on October 9, 2019 when another coworker made a comment to the effect that "all black women stink" (hereafter, the "Stink Comment Incident"). (See id.) The third incident purportedly also occurred on October 9, 2019 when yet, a third coworker, Dylan J. Savarese, sent a text with an offense picture and caption (hereafter, the "Charcoal Text Incident"; together with the Hanging Comment Incident and the Stink Comment Incident, the "Racial Comments Incidents"). (See id.) He also attached a copy of a picture of a man pointing a gun at a child with the caption, "[w]hen you're barbecuing and the charcoal runs away." (Id. at 2.) Handwritten above the picture's caption is the statement: "This was send to ME by DyLAN J. SAVARESE on 10/9/2019 by text."[2] (See id.)

In ruling on Defendants' Renewal Letter, the Court stated:

> Here, given Defendants have moved for summary judgment, which they are entitled to do pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, if Plaintiff seeks to proceed with this action, as his OSC Response indicated, he is required to respond. The "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" (hereafter, the "Rule 56.2

---

[2]  The Court presumes this picture is the image in the text referenced in the Charcoal Text Incident.

Notice"), required by Local Civil Rule 56.2, explains as much. In pertinent part, the Notice states:

> The defendant in this case has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This means that the defendant has asked the Court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing sworn affidavits and/or other documents <u>as required by Rule 56(c) of the Federal Rules of Civil Procedure</u> and by Local Civil Rule 56.1 . . . ."

(Renewal Order, ECF No. 37, at 5 (quoting Local Civil Rule 56.2 Notice (emphasis added)).) The Court further explained the purpose of the Local Civil 56.2 Notice and "[t]he very reason this Court initially denied Defendants' Summary Judgment Motion was because Defendants had not also served Plaintiff with the requisite Rule 56.2 Notice." (<u>Id.</u> at 6 (citing Dec. 21, 2023 Elec. ORDER, and Dec. 11, 2023 Elec. ORDER (deferring ruling on Defendants' Summary Judgment Motion because it was unclear whether Defendants had served the Rule 56.2 Notice).) The Court then summarized subsequent procedural history of the case, leading up to and including Plaintiff's OSC Response. (<u>See</u> <u>id.</u>) Having considered said Response, the Court determined it was "sufficient to show cause why the Court should not dismiss Plaintiff's case", but "not

7

sufficient to defeat Defendants' Summary Judgment Motion." (<u>Id.</u> at 7.)  <u>See</u> Fed. R. Civ. P. 56(c).  Significantly, as to the Summary Judgment Motion, the Court found, from Plaintiff's OSC Response, "it is not 'reasonably apparent' that Plaintiff 'understood the nature of [Defendants'] [S]ummary [J]udgment [M]otion and the consequences <u>for not properly opposing it</u>.'" (Id. (omitting citations).)  Therefore, for the following reasons, it provided Plaintiff a second opportunity to oppose Defendants' Summary Judgment Motion:

> [T]he footnote in Defendants' Renewal Letter regarding their December 21, 2023 mailings of their "motion papers and referenced case law, along with a Local Rule 56.2 notice", which "Plaintiff apparently refused to accept" and "which were 'returned to sender' and deemed 'undeliverable'" (<u>id.</u> at 2 and note 1), gives the Court pause.  Given that disclosure, it is again unclear whether Plaintiff had notice of what was required of him to respond to Defendants' Summary Judgment Motion and what would be the consequences of failing to do so.

(<u>Id.</u> at 8 (footnote omitted).)  Further, in addition to "afford[ing] Plaintiff a **FINAL OPPORTUNITY** to respond to Defendant's Summary Judgment Motion," the Court provided Plaintiff with the Local Rule 56.2 Notice, prefacing that he was "**ON NOTICE**" regarding the implications of same.  (<u>Id.</u> at 9-10 (quoting Local Civil Rule 56.2 Notice (eff. July 1, 2024); emphases in original).)  In closing, the Court emphasized:

> **This is Plaintiff's FINAL OPPORTUNITY to
> timely respond, in accordance with Federal
> Rule of Civil Procedure 56(c) and Local Civil
> Rule 56.1, to Defendant's Summary Judgment
> Motion. Failure to do so will result in the
> Court deeming the Summary Judgment Motion
> unopposed and ripe for decision.**

(Id. at 10 (emphases in original).)  The corresponding briefing
schedule included the instruction that "Defendants re-serve
Plaintiff their summary judgment motion papers and the Local Rule
56.2 Notice".  (See id. at 11.)  Moving papers were to be re-served
by September 20, 2024; Plaintiff's Opposition was to be served by
October 25, 2024; and, Defendants' Reply was to be served by
November 8, 2024.  (See id.)

        On September 19, 2024, in compliance with the Renewal
Order's briefing schedule, Defendants re-served its Motion and the
required Local Rule 56.2 Notice upon on Plaintiff.  (See Aff. of
Serv., ECF No. 39.)  Once more, Plaintiff failed to timely serve
an Opposition.  (See Case Docket, in toto.)  Instead, on November
7, 2024, Plaintiff filed a letter hand-dated "10/30/24"; it was a
copy of his one-page OSC Response, albeit notarized, together with
a copy of the same picture attachment, but without the handwritten
statement (hereafter, the "Purported Opposition Letter").
(Compare Pl.'s Oct. 30, 2024 Letter, ECF No. 40, with OSC Response,
ECF No. 36; see also Aff. of Serv., ECF No. 41 ("Affirmation of
Service" upon Defendants of "notarized affidavit").)  On November
8, 2024, Defendants served their Reply in further support of their

Motion.  (ECF No. 43.)  That same day, they filed their fully-briefed Summary Judgment Motion.  (See ECF No. 42.)

## II.  Procedural Defects

When moving for summary judgment, in addition to complying with Federal Rule of Civil Procedure 56, the parties must comply with Local Rule 56.1.  See J. Seybert Ind. Rule III.A ("**Strict compliance with the Federal Rules of Civil Procedure, Local Rules of the Eastern District of New York, and this Court's Individual Rules is required.  Submissions not in compliance, including, but not limited to untimely submissions, may not be considered by the Court.**") (emphasis in original)), available at https://www.nyed.uscourts.gov/pub/rules/JS-MLR.pdf.  As the Second Circuit has instructed, the Local Rule 56 "requirement is strict".  T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009).  Local Rule 56.1 requires a party moving for summary judgment to submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Rule 56.1(a).  The party opposing summary judgment, in turn, must file "a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a

10

genuine issue to be tried." Local Rule 56.1(b). If the party opposing summary judgment denies any of the facts in the movant's 56.1 statement, the opposing party must support its position by citing to admissible evidence in the record. See Local Rule 56.1(d). The movant's asserted facts are deemed to be admitted unless specifically controverted by a correspondingly numbered paragraph in the responding statement required to be served by the opposing party. See Local Rule 56.1(c); see also Local Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."); see also F.D.I.C. v. Hodge, 50 F. Supp. 3d 327, 343 n.2 (E.D.N.Y. 2014) (citing Local Rule 56.1(d)).

Upon the failure to properly controvert a movant's statement of material fact, such statement "will be deemed to be admitted for the purposes of the motion." Local Rule 56.1(c); see also Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citation omitted)). It is not the role of the Court to search the summary judgment record for evidence supporting a nonmovant's opposition. See N.Y.S. Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir.

11

2005) (recognizing authority of district courts to institute local rules governing summary judgment submissions, which permits courts "to efficiently decide" such motions "by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001).)

Further, pro se litigants are "not excused from meeting the requirements of Local Rule 56.1." Wall v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); Manolis v. Brecher, No. 11-CV-2750, 2014 WL 642849, at *3 (S.D.N.Y. Feb. 14, 2014) ("[Plaintiff's] status as a pro se litigant does not relieve h[im] of the duty of complying with federal and local rules" and "the 'special solicitude' frequently afforded to pro se litigants does not excuse [a plaintiff's] failure to comply with the requirements of Local Rule 56.1.") (citing Tracy v. Freshwater, 623 F.3d 90, 103 (2d Cir. 2010)).

Here, despite multiple opportunities to do so, Plaintiff has failed repeatedly to comply with Local Rule 56.1, as well as the Court's orders. Indeed, Plaintiff has failed to specifically controvert -- by a compliant Local Rule 56.1(c) responsive statement, his Purported Opposition Letter or otherwise –- any of Defendants' Local Rule 56.1(a) statements of fact. Where "a party fails to . . . properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes

of the motion [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Pennington v. D'Ippolito, 855 F. App'x 779, 781 (2d Cir. 2021) (citing FED. R. CIV. P. 56(e)); see also Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000) (noting district court properly "granted summary judgment in favor of defendants following plaintiff's failure to deny, in accordance with Rule 56.1 of the court's local rules," various allegations of defendants).   As such, the entirety of Defendants' Rule 56.1 Statement will be deemed admitted for the purposes of deciding the instant summary judgment Motion.   See Local Civil Rule 56.1(c); see also, e.g., Giannullo, 322 F.3d at 140; Ezagui v. City of N.Y., 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010) (noting statements which a nonmovant does "not specifically deny–with citations to supporting evidence–are deemed admitted for purposes of [movant's] summary judgment motion") (collecting cases).

Further, for clarity, the Court explains:  Plaintiff has not provided any admissible, sworn affidavits in opposition to Defendants' Motion.   See, e.g., FED. R. CIV. P. 56(c)(4).   His Purported Opposition Letter is unavailing; while notarized, it is neither presented in affidavit form nor sworn to under penalty of perjury.[3]  See White v. Roosevelt Union, No. 15-CV-1035, 2023 WL

---

[3] Furthermore, as stated supra, Plaintiff failed to submit the Purported Opposition Letter in a timely manner.  Nonetheless, as

4420117 at 2 n.2 (E.D.N.Y. July 10, 2023) (citing <u>DeMars v. O'Flynn</u>, 287 F. Supp. 2d 230, 242 (W.D.N.Y. 2003)):

> By definition, an affidavit is a sworn document, declared to be true under the penalties of perjury . . . . To be considered in connection with a summary judgment motion, the rule requires that submissions in the form of statements be prepared as affidavits . . . . Failure to submit materials in this form will cause the submission to be disregarded by the court in its consideration of the pending motion.

<u>Id.</u> (quoting 11 MOORE'S FEDERAL PRACTICE, § 56.14(1)(b) (Matthew Bender 3d ed.)); <u>see also</u> <u>Flowers v. Abex Corp.</u>, 580 F. Supp. 1230, 1233 n.2 (N.D. Ill. 1984) ("Merely notarizing the signature does not transform a letter into an affidavit."). Therefore, the Purported Opposition Letter is insufficient to defeat summary judgment.

Hence, the Court accepts Defendants' facts as admissions to the extent they are supported by admissible evidence.

III. <u>Relevant Factual History</u>

A. <u>The Village and its Department of Public Works, Generally</u>

The Village is an incorporated municipality located in Nassau County. (Defs. 56.1 Stmt. ¶ 1.) Plaintiff, an African American man, was hired by the Village in 2007 as a part-time custodian at Village Hall. (<u>Id.</u> ¶¶ 2, 19.) The Village maintains an Equal Employment Opportunity policy that prohibits

---

discussed <u>infra</u>, even if the Court considered the Purported Opposition Letter, it fails to create a genuine dispute of any material fact.

discrimination and harassment based on "race, color, religion, sex
. . . or status in any group protected by State or local law in
the workplace." (Defs. 56.1 Stmt. ¶ 3.) It also maintains an
anti-retaliation policy rendering it unlawful to take adverse
action against an employee because of the employee's protected
activity. (Id. ¶ 6.)

The Village's Department of Public Works ("Public
Works") consists of the Parks Department, as well as the Highway,
Sanitation, Water and Sewer, and Recreation Departments. (Id.
¶ 7.) Defendant Mr. Rini has been the Superintendent of Public
Works since 2000. (Id. ¶ 12.) As the Superintendent, Mr. Rini
oversees all the Departments and employees within Public Works.
(Id.) The Deputy Superintendent of Public Works assists Mr. Rini
in planning and directing the activities of the Departments. (Id.
¶ 13.) Each Department within Public Works has its own supervisor
who oversees the day-to-day operations of his or her respective
Department. (Id. ¶ 14.)

The Parks Department is responsible for the maintenance
of the park and recreation facilities in the Village. (Id. ¶ 11.)
The Parks Department consists of five employees who maintain the
Village's two public parks: three employees at Wilson Park and two
employees at Memorial Park. (Id. ¶¶ 16-17.) During the summer
season, the Village typically staffs the Parks Department with
additional seasonal workers. (Id. ¶ 23.) The Highway Department

15

supplements the Parks Department by maintaining the trees and plants and cutting the grass at the parks.    (Id. ¶ 18.) Additionally, when the Parks Department is short-staffed, Mr. Rini directs the Highway Department employees to assist with some of the work in the parks. (Id. ¶ 22.)

Sometimes the Village struggled to secure seasonable help for the Parks Department since it was not the most popular location for prospective summer employees.  (Id. ¶ 25.)  Plaintiff had seasonal help in Wilson Park during the Summers of 2013, 2014, 2015, 2017, and 2018. (Id. ¶ 24.)  Specifically, the Village assigned one seasonal worker to Wilson Park during the Summer of 2013; two in 2014; two in 2015; one in 2017; and one in 2018. (Id.)  In 2016, the Village was unable to secure a seasonal worker at Wilson Park.  (Id. ¶ 25.)

Though not guaranteed, Public Works employees can obtain overtime by working special Village events outside of their ordinary shifts.  (Id. ¶ 26.)  In 2017, there were two Village events simultaneously planned: a concert at Memorial Park, and an outdoor Movie Night at Wilson Park.  (Id. ¶ 28.)  The Movie Night was a small event which required no additional services or employees, but only periodic checks by the Supervisor and security patrol.  (Id.)

Both Memorial Park and Wilson Park have the same landscape equipment, including lawnmowers, line trimmers, backpack

16

blowers, rakes, brooms, shovels and barrels for debris, and the same cleaning supplies for cleaning the restrooms.  (Id. ¶ 29.) Public Works provides equipment to the various Departments based upon the type of work and tasks to be completed.  (Id. ¶ 30.)  The Highway and Sanitation Departments have access to heavy duty equipment to perform tree removals, road construction, and refuse collection; the Parks Department performs basic landscape tasks and, therefore, does not require such equipment.  (Id.)

B. Plaintiff's Employment with the Village, Generally

In 2011, Plaintiff applied for and was appointed to a full-time position in the Parks Department at Wilson Park, where he is currently employed.  (Id. ¶ 19.)  His duties include keeping Wilson Park clean, e.g., picking up garbage, leaves, and debris; cleaning the bathroom facilities. (Id. ¶ 20.)  Plaintiff reports directly to the Parks Department supervisor; if the supervisor is absent, Plaintiff reports to the Deputy Superintendent, and if the Deputy Superintendent is absent, Plaintiff reports to Mr. Rini. (Id. ¶ 15.)

As a member of the United Public Service Employees Union ("UPSEU"), Plaintiff's employment by the Village is governed by a collective bargaining agreement ("CBA") between the Village and the UPSEU.  (Id. ¶ 31.)  Pursuant to the CBA, an employee can take vacation time only after receiving the supervisor's written approval.  (Id. ¶ 32.)  Since at least 2000, Public Works has had

a written policy entitled, "General Guidelines Regarding the Use of Benefit Time Off" (the "Vacation Policy") requiring that all vacation time be requested and approved in advance and warning employees that "[i]f time off is not approved, time off cannot be taken." (Id. ¶¶ 33-34.)  Public Works employees, including Plaintiff are required to submit requests for time off to Mr. Rini, who ultimately decides whether to approve them. (Id. ¶ 32.)  The Vacation Policy specifies that limited time off is approved during each Departments' peak season.  (Id. ¶ 35)  Peak season for the Parks Department is from May 15 through September 15.  (Id. ¶ 37)  Plaintiff would have been notified about this policy before he was hired.  (Id. ¶ 40.)  In 2011 or 2012, Mr. Rini denied Plaintiff's request to take vacation for two consecutive weeks of the summer. (Id. ¶ 41.)

   C. Plaintiff's Three Claims of Racially Offensive Comments

        Plaintiff alleges three incidents of racially offensive comments by non-supervisory coworkers.  (Id. ¶ 42; see also Am. Compl.; cf. OSC Response.)  They appear to be variations of the Racial Comments Incidents Plaintiff identified in his OSC Response and Purported Opposition Letter.  In the absence of a Local Rule 56.1 Response from Plaintiff, the Court summarizes these Incidents as presented by Defendants.

1. <u>The Hanging Comment Incident</u>

First, a couple of years before September 2017, a coworker made a comment at work that he was going to hang Plaintiff from a tree. (Defs. 56.1 Stmt. ¶¶ 43-44; Am. Compl. ¶ 22.) He did not mention Plaintiff's race. (Defs. 56.1 Stmt. ¶ 43.) This comment was prompted by Plaintiff's own comment to that coworker referring to the coworker's "terrorist fiancé" (a Muslim woman of Egyptian descent). (<u>Id.</u> ¶ 46.) Both Plaintiff and the coworker were spoken to by supervisory personnel. (<u>Id.</u> ¶ 45.) Mr. Rini also spoke to both employees and advised them that they would be disciplined if he heard or witnessed similar comments. (<u>Id.</u>) While Plaintiff claims Mr. Rini did not take any action against his coworker, Plaintiff also (inconsistently) testified he had no knowledge whether any action was taken against the coworker. (<u>Id.</u> ¶ 47 (citing § 50(h) Hr'g Tr., Ex. B, ECF No. 42-3, at 89 ("I don't think Peter was suspended or written up. I don't know. I don't know what – I'm not aware of that action they take.")).)

2. <u>The Stink Comment Incident</u>

On August 31, 2017, while discussing a trip to a strip club, a non-supervisory coworker made a comment that "all black women are stink". (<u>Id.</u> ¶ 48.)

3. <u>The Charcoal Test Incident and Subsequent Response</u>

Later that same day, after he had an altercation with Plaintiff about racism, another non-supervisory coworker sent an

19

inappropriate text in a group chat between non-supervisory Highway and Parks Department employees.  (Id. ¶¶ 49, 51.)  The text included a picture of a white man riding a horse and chasing a small black child with the caption, "When you're barbequing and the charcoal runs away."  (Id. ¶ 49.)

Mr. Rini was not on-site on August 31, 2017, but was advised of the incident by the Deputy Superintendent of Public Works when he returned early the next week.  (Id. ¶ 50.) During his subsequent investigation, Mr. Rini learned most of the non-supervisory Highway and Parks Department employees belonged to a group chat through which racially charged messages were exchanged. (Id. ¶ 51.)  Thereafter, Mr. Rini immediately called a meeting with the Highway and Parks Department employees, but excluded Plaintiff because he was concerned an argument would ensue.  (Id. ¶ 52.)  Mr. Rini informed those employees at the meeting that their behavior was offensive and inappropriate, and remined them of the Village's zero-tolerance policy for that type of behavior.  (Id. ¶ 53.)  He warned the meeting attendees that any similar behavior moving forward would be met with disciplinary action, including suspension and possible termination for bullying and workplace violence.  (Id.)  The employees informed Mr. Rini that Plaintiff had created the group chat and often made racially charged jokes and comments himself.  (Id. ¶ 54.)  Mr. Rini advised the Highway and Parks Department employees that, moving forward,

he would not allow further group texts among employees and that nobody was allowed to make inappropriate jokes at work. (Id. ¶ 55.)

Following the meeting, Mr. Rini informed the Village Attorney's office about the incident. (Id. ¶ 56.) Mr. Rini also met with Plaintiff and informed him about his discussion with the other employees, including that there was a zero-tolerance policy for such behavior and that he would not allow group texts among employees or inappropriate jokes at work. (Id. ¶ 57.) According to Plaintiff, Mr. Rini said he was sorry for what happened, that he would take care of it, and that it would not happen again. (Id. ¶ 58.) Since the time in 2017, when Mr. Rini addressed this incident, through November 22, 2019, when Plaintiff testified at his Section 50(h) hearing, Plaintiff did not experience any coworkers making racially offensive comments towards him. (Id. ¶ 59 (citing § 50(h) Hr'g Tr. 114.)

### 4. The First UPSEU Grievance

On September 20, 2017, the UPSEU filed a grievance with the Village on Plaintiff's behalf alleging Mr. Rini discriminated against Plaintiff based upon his race. (Id. ¶ 60; Sept. 20, 2017 Grievance Letter, Ex. H, ECF No. 42-9.) The grievance alleged that on September 18, 2017, Mr. Rini reprimanded Plaintiff for his repeated tardiness and warned him that if it continued, he would be written up and possibly face further progressive discipline.

(Defs. 56.1 Stmt. ¶ 61.)   The grievance also stated Plaintiff's belief that Mr. Rini made this threat in retaliation for reporting a racially motivated incident involving a coworker.   (Id.) Specifically, the grievance claimed:

- Mr. Caesar is denied vacation when he puts in for two weeks of vacation time simultaneously, and can therefore only take vacation in single weeks, while other non-minority employees are approved for two weeks of simultaneous vacation.

- For the past five years Mr. Caesar has been assigned to work overtime during the Mineola Village Movie Night in the Park, until this year when the overtime was reassigned to a caucasian employee from another department.

- Several years ago, one of Mr. Caesar's caucasian co-workers said he was going to hang him from a tree.   This was reported to Mr. Rini, however Mr. Rini failed to address this issue to Mr. Caesar's satisfaction, and by further preventing discrimination by his co-workers.

- For several winters, Mr. Caesar was assigned to remove ice and snow manually from walkways without the proper equipment by himself, while co-workers from other departments, that are primarily caucasian, worked in teams to remove snow and ice with the proper equipment.

- Two employees left the Parks Department, leaving Mr. Caesar as the only employee left in that department.   Mr. Rini never replaced any of the employees in the department, however, he added additional employees to the highway and sanitation departments, which primarily consists of caucasian employees. Mr. Caesar was then expected to perform the additional workload by himself, without any help or assistance.

- In addition, over the past several years, Mr. Caesar was not provided with temporary summer help in his department while other departments, whom consist primarily of caucasian workers, were provided the additional summer help.

- Mr. Caesar has requested additional equipment from Mr. Rini to perform his duties and has been denied, while other departments who are primarily caucasian received additional equipment on a regular basis.

(Grievance Letter at 2-3 (emphasis added).)

Following Mr. Rini's response to each of Plaintiff's grievances, a meeting was held during which Plaintiff's grievances were discussed and resolved; thereafter, on April 27, 2018, the UPSEU formally withdrew Plaintiff's grievance complaint. (Defs. 56.1 Stmt. ¶ 64 (citing UPSEU Apr. 27, 2018 Letter, Ex. J, ECF No. 42-11).)

### 5. The Summer 2019 Vacation Requests

During the Summer of 2019, in writing, Mr. Rini denied some of Plaintiff's requests to take time off in July and August (hereafter, the "Summer 2019 Vacation Requests"); he explained Plaintiff had already taken or scheduled 11 days off during the summer season. (Id. ¶¶ 65-66.) For example, Mr. Rini granted Plaintiff's request to take off on July 12, 2019, but denied his request to take off on July 29, 2019. (Id. ¶ 67.) When Plaintiff requested to take off August 12 and 19, 2019, Mr. Rini responded

Plaintiff could take off one of those days, but not both; Plaintiff was to choose which of those two days he would request. (Id. ¶ 68.) Thereafter, Plaintiff chose to request August 12th as the day off; Mr. Rini approved that request and denied Plaintiff's request to take off August 19th, explaining Plaintiff had already taken days off during the summer season. (Id.) On August 1, 2019, Plaintiff submitted a written request to take off from August 23 through August 26, 2019. (Ex. K, ECF No. 42-12, at 8.) Mr. Rini denied Plaintiff's request, writing:

> As indicated in my previous Note to you (copy attached), you would be permitted to use one additional day, either August 12th or 19th, and you chose August 12th, during this summer season. Based upon this previous determination, no additional days off will be approved until after Labor Day 9/2/19.

(Defs. 56.1 Stmt. ¶ 69.)

### 6. The Second UPSEU Grievance

On August 12, 2019, the UPSEU filed a second grievance on Plaintiff's behalf claiming Mr. Rini denied Plaintiff's request to take vacation on August 23 through August 29, 2019, because of his race. (Id. ¶ 71.) By memorandum dated September 4, 2019, Mr. Rini denied Plaintiff's grievance explaining his vacation denial was to ensure proper coverage at Wilson Park during its peak park season, i.e., from Memorial Day through Labor Day. (Id.¶¶ 72-74; Rini Sept. 2019 Memo, Ex. O, ECF No. 42-16.) Mr. Rini's denial explained: Plaintiff had taken 12 days off (i.e., nine vacation

24

days and three personal days) during the peak park season, more than any other Parks Department employee; and Mr. Rini denied Plaintiff's request for time off in August 2019 "solely based upon ensuring proper coverage in the park that Plaintiff is assigned to during the [peak] park season." (Defs. 56.1 Stmt. ¶¶ 72, 74-75; Rini Sept. 2019 Memo at 2-3 (The "approval or denial of vacation time off is clearly a management function and clearly within [Mr. Rini's] purview and authority as the Department Head to exercise as [he] feel[s] necessary, in this case to maintain proper upkeep of a park during the height of summer when a park is most used.").)

On September 9, 2019, the UPSEU requested a grievance hearing. (Defs. 56.1 Stmt. ¶ 77.) At its September 18, 2019 meeting, the Village's Board of Trustees appointed Special Counsel for the Village and a hearing officer for the grievance hearing. (Id. ¶ 78.) In October 2019, the hearing officer attempted to schedule a hearing date. (Id. ¶ 79.) After several postponement notifications, the UPSEU's attorney notified the Village that it did not intend to pursue the grievance hearing.[4] (Id. ¶ 80.)

D.    The Instant Action

This action was commenced on February 15, 2022. (See Compl., ECF No. 1.) Attached to the Complaint was Plaintiff's "Right to Sue" letter, dated December 23, 2021, received from the

---

[4]    As of the date of the filing of the instant motion, the UPSEU had failed to withdraw the grievance. (Id. ¶ 80.)

25

Civil Rights Division of the U.S. Department of Justice. (See Right to Sue Letter, ECF No. 1-1.)

DISCUSSION

## I. Legal Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wagner v. Chiari & Ilecki, LLP, 973 F.3d 154, 164 (2d Cir. 2020) (quoting Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007)) (internal quotation marks omitted). The movant bears the burden of establishing that there are no genuine issues of material fact in dispute. CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," as Plaintiff does here, "the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Vill. of Depew, 75 F.3d 98, 107 (2d Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).

In determining whether an award of summary judgment is appropriate, the Court considers the "pleadings, deposition

testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011). In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)). When drawing inferences from evidence in the record in favor of the non-moving party, however, a court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1318 (2d Cir. 1990)).

"Once the movant has 'demonstrat[ed] the absence of a genuine issue of material fact . . . the onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim.'" Pennington, 855 F. App'x at 781 (alteration in original) (quoting Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008)). To do this, "[t]he non-moving party is required to 'go beyond the pleadings' and 'designate specific

facts showing that there is a genuine issue for trial.'" Id. (quoting Holcomb, 521 F.3d at 137).

The Court highlights, "particularly where motions for summary judgment are concerned," Jackson v. Fed. Express, 766 F.3d 189, 195 (2d Cir. 2014), it is "obligated to afford a special solicitude to pro se litigants." Freshwater, 623 F.3d at 101. Nevertheless, pro se litigants are "generally . . . required to inform themselves regarding procedural rules and to comply with them." Wilson v. Suffolk County Dist. Att'y, No. 21-CV-4815, 2021 WL 4311155, at *2 (E.D.N.Y. Sept. 22, 2021) (quoting Caidor v. Onondaga County, 517 F.3d 601, 605 (2d Cir. 2008)); see also generally Kotler v. Jubbert, 986 F.3d 147, 156 (2d Cir. 2021) (explaining "solicitude for pro se litigants does not require [courts] to excuse failure to comply with understandable procedural rules").

## II. Title VII Claims

### A. Plaintiff's Claims Against the Parks Department

Plaintiff cannot maintain a claim against the Parks Department as it is merely an administrative arm of the Village; therefore, the Parks Department does not have a legal identity separate and apart from the Village. See e.g., Guichard v. Town of Brookhaven, 26 F. Supp. 3d 219, 226 (E.D.N.Y. 2014) ("[U]nder New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart

from the municipality and cannot sue or be sued.") (quoting <u>Walker IV v. U.S. Marshals</u>, No. 08-CV-0959, 2009 WL 261527, at *2 (E.D.N.Y. Feb. 4, 2009)).  Accordingly, Plaintiff's claims against the Village's Parks Department are DISMISSED.

   B. <u>Plaintiff's Claims Against Mr. Rini</u>

       Plaintiff cannot maintain his Title VII claims against Mr. Rini as "individuals are not subject to liability under Title VII." <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 221 (2d Cir. 2004) (quoting <u>Wrighten v. Glowski</u>, 232 F.3d 119, 120 (2d Cir. 2000) (per curium), and citing <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1313 (2d Cir. 1995) ("individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"), <u>abrogated on other grounds by</u> <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998).))  Therefore, Plaintiff's Title VII claims against Mr. Rini are DISMISSED.[5]


                    [Proceed to next page.]


---

[5]  To the extent Plaintiff intended to assert his Title VII claims against Mr. Rini in his official capacity, such claims are duplicative of his claims against the Village and are, therefore, dismissed.  <u>See</u> <u>Falcon v. City Univ. of N.Y.</u>, No. 15-CV-3421, 2016 WL 3920223, *6 (E.D.N.Y. July 15, 2016) (collecting cases rejecting "Title VII claims against individuals in their official capacities because those claims are duplicative" of claims against the employer).

C. <u>Plaintiff's Claims Against the Village</u>

    1. <u>Most of Plaintiff's Claims are Time-Barred</u>

Prior to filing a Title VII claim, a plaintiff must timely file a charge with the EEOC within 300 days of the alleged discriminatory act. <u>See</u> 42 U.S.C. § 2000e-5(e)(1), 42 U.S.C. § 12117. "Failure to timely file a charge with the EEOC renders a Title VII claim time-barred, thereby preventing a claimant from bringing h[is] claim in federal court." <u>Fanelli v. New York</u>, 51 F. Supp. 3d 219, 227 (E.D.N.Y. 2014) (citing <u>Elmenayer v. ABF Freight Sys., Inc.</u>, 318 F.3d 130, 133-34 (2d Cir. 2003)). This exhaustion requirement applies to both causes of action as well as the underlying factual allegations. <u>Id.</u> The requirement of filing a charge within 300 days is similar to a statute of limitations. <u>See</u> <u>Quiles v. Suffolk County Cmty. Coll.</u>, No. 02-CV-2399, 2005 WL 8161194, * 5 (E.D.N.Y. Sept. 28, 2005) (citing <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982)).

The continuing violation doctrine provides an exception "for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination so long as one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." <u>Fanelli</u>, 50 F. Supp. 3d at 227-28 (internal quotation marks and citations omitted). Nevertheless, this doctrine "does not apply to discrete acts of discrimination,

30

even if they are related to acts alleged in timely filed charges." Blair v. L.I. Child and Family Dev. Servs., Inc., No. 16-CV-1591, 2017 WL 722112, at *9 (E.D.N.Y. Jan. 31, 2017), report and recommendation adopted, 2017 WL 728231 (E.D.N.Y. Feb. 21, 2017) (internal quotation marks and citation omitted); see also, e.g., Lukasiewicz–Kruk v. Greenpoint YMCA, 404 F. App'x 519, 520 (2d Cir. 2010) ("Recovery for discrete acts of discrimination or retaliation that occur outside of the applicable limitations period is precluded, even if the acts are related to acts alleged in timely filed charges." (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002))). Instead, "each discrete act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113; see also Cabrera v. N.Y. City, 436 F. Supp. 2d 635, 642 (S.D.N.Y. 2006) ("The Second Circuit has repeatedly ruled that 'multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" (citation omitted)). Notably, "the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." Trinidad v. N.Y. City Dep't of Corr., 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (internal quotation marks omitted).

Though "not independently actionable, acts that occur outside the limitations period may nevertheless be used 'as

background evidence in support of a timely claim.'" <u>Fanelli</u>, 51
F. Supp. 3d at 228 (quoting <u>Morgan</u>, 536 U.S. at 113).  "Thus,
'evidence of an earlier alleged [discriminatory or] retaliatory
act may constitute relevant background evidence in support of [a]
timely claim . . . [and] may be considered to assess liability on
the timely alleged act." <u>Id.</u> (quoting <u>Jute v. Hamilton Sundstrand
Corp.,</u> 420 F.3d 166, 176–77 (2d Cir. 2005) (internal quotation
marks and citation omitted)).

Here, Defendants contend Plaintiff's claims, other than
his allegations regarding the denial of his Summer 2019 Vacation
Requests, are time-barred.  (Mot. at 17-21).  The Court agrees.

On March 9, 2020, Plaintiff filed charges with the EEOC.
(<u>See</u> Ex. D.)  Therefore, Plaintiff's Title VII claims based upon
discrete discriminatory conduct that occurred more than 300 days
prior to March 9, 2020, <u>i.e.</u>, before May 14, 2019, are time-barred.
Those time-barred claims are:

(1)  the denial of overtime during the Village Movie
Night <u>in 2017</u> (Am. Compl. ¶ 24);
(2)  failing to replace two employees who left the Parks
Department leaving Plaintiff to do all the work himself
sometime <u>prior to September 2017</u> (Am. Compl. ¶ 24);
(3)  failing to provide seasonal help sometime <u>in 2016</u>
(Am. Compl. ¶ 24);
(4)  failing to provide Plaintiff with additional
equipment to perform his duties <u>prior to September 2017</u>
(Am. Compl. ¶ 24); and

32

> (5)  the three allegedly racially charged comments made to Plaintiff by non-supervisory coworkers: <u>one in or around 2015 and two on August 31, 2017</u>. (Am. Compl. ¶¶ 20, 22, 23.)

(Def. 56.1 Stmt. ¶¶ 42-44, 48-49, 62.)  (Hereafter, the "Time-Barred Claims".[6])  Admittedly, all these Time-Barred Claims occurred well before May 14, 2019. (<u>Compare</u> Am. Compl. ¶¶ 20-24, <u>with</u> Grievance Letter <u>and</u> § 50(h) Hr'g Tr. 82:8-84:13.)  In fact, all the Time-Barred Claims conduct occurred before September 17, 2017, the date Plaintiff filed his first grievance. (<u>See</u> Grievance Letter.)  Therefore, since the record evidence establishes the Time-Barred Claims fall outside the statute of limitations, Plaintiff's Title VII claims based upon same are denied and, as a matter of law, Defendants are entitled to summary judgment in their favor.

To the extent, by way of his Purported Opposition Letter, Plaintiff contends that two of the Time-Barred Claims occurred on October 9, 2019, thereby implying they are timely claims, his contention is unavailing.[7] (ECF No. 40.)  To begin, the Court has

---

[6]  The Court notes, based upon the record evidence, it is apparent that the Time-Barred Claims referenced in paragraph (5), above, are the Racial Comments Incidents, <u>i.e.</u>, the three incidents identified by Plaintiff in his OSC Response and his Purported Opposition Letter.

[7]  Plaintiff does not dispute that the Hanging Comment Incident occurred at least two years earlier. (<u>See</u> ECF No. 40.)  Indeed, in his Purported Opposition Letter, Plaintiff states the Hanging Comment Incident occurred "[d]uring 2016/2017 timeframe". (<u>Id.</u>)

already determined the Purported Opposition Letter is insufficient to defeat summary judgment as it is not a properly submitted affidavit. (See supra at 13-14.) Thus, the statements in Defendants' 56.1 Statement are deemed admitted; upon those statements, Defendants have established the Stink Comment Incident and the Charcoal Text Incident occurred beyond the applicable 300-day lookback period. Even if that were not so, independently, the record evidence disproves Plaintiff's implicit timeliness contention.

In his September 2019 Notice of Claim, Plaintiff alleged, inter alia, "Several years ago . . . [a]n additional co-worker made racist remarks regarding black women stating, '[He doesn't] date black women. Black women are stink,' and then sent Mr. Caesar a picture of a white man shooting at a black child." (Sept 19, 2019 Notice of Claim, Ex. C, ECF No. 42-4, at Part 3 (emphasis added).) Plaintiff corroborated the time of these Incidents during his Section 50(h) examination, testifying they occurred in 2017 or 2018, not in 2019, as he now claims. (See § 50(h) Hr'g Tr. 82:8-84:13.) Plaintiff further testified that nobody had made any racist comments to him from the time of those Incidents through November 22, 2019, the date of the Section 50(h) examination. (Id. 114:16-22.) Thus, by his own testimony,

_____

As such, this allegation is clearly outside the statute of limitations.

Plaintiff establishes the Stink Comment Incident and Charcoal Text Incident occurred outside the relevant look-back period.

Further, "[i]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." Haxton v. PL Smithtown, LLC, No. 2020 WL 1244849, at *7 (E.D.N.Y., Mar. 16, 2020) (quoting Colvin v. Keen, No. 13-cv-3595, 2016 WL 5408117, at *3 (E.D.N.Y. Sept. 28, 2016); collecting cases). Thus, even if the Court were to consider Plaintiff's Purported Opposition Letter to be a proper affidavit, which it has declined to do, the "factual issue" regarding the timeliness of Plaintiff's claims based upon the Stink Comment Incident and the Charcoal Text Incident are not "genuine" issues for trial. See Hayes v. N.Y.C. Dep't of Corrs., 84 F.3d 614, 619 (2d Cir. 1996); see also Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts h[is] own prior deposition testimony."). Nor has Plaintiff attempted to reconcile the inconsistencies regarding the dates. See, e.g., Jeffrey v. Montefiore Med. Ctr., No. 11-cv-6400, 2013 WL 5434635, at *15 (S.D.N.Y. Sept. 27, 2013) (finding, where inconsistencies existed between a non-movant's affidavit and corresponding deposition

testimony, which inconsistencies the non-movant party made no effort to reconcile or otherwise explain, the court did not consider those statements) (collecting cases). Hence, at bottom, upon the summary judgment record, the Court finds no dispute that the Stink Comment Incident and the Charcoal text Incident are time-barred.

Moreover, the continuing violation doctrine cannot save Plaintiff's Time-Barred Claims as those claims are based upon a series of discrete acts insufficient to constitute a continuing violation.  See, e.g., Bain v. Highgate Hotels, LP, No. 08-CV-3263, 2009 WL 10705912, at *7 (E.D.N.Y. July 7, 2009) (finding "a series of discrete acts consisting of specific failures to assign [plaintiff] to the early shift . . . , a particular denial of a requested vacation date, or an assignment of an onerous task on some occasions" did "not support invocation of the continuing violation doctrine"); Johnson v. City of N.Y., No. 17-CV-7585, 2019 WL 4468442, at *6 (E.D.N.Y. Sept. 18, 2019) (finding "terminations, disciplinary actions, failures to offer overtime hours, failures to grant vacation time, failures to compensate adequately, and undesirable assignments" were time-barred discrete acts); Kaur v. N.Y.C. Health & Hosps. Corp., 688 F. Supp. 2d 317, 327-288, 330 (S.D.N.Y. 2010) (supervisors' and coworkers' comments that they "don't want foreigners here" and that Indians "sell their daughters", "eat cows" and "never tell the truth and lie" were

36

discrete acts); <u>Diaz v. Weill Med. Ctr. of Cornell Univ.</u>, No. 02-CV-7380, 2004 WL 285947 at *18 (S.D.N.Y. Feb. 13, 2004) (finding "allegedly discriminatory remarks, all of which took place during the time bar period and none of which occurred during the 300 day look back period, are time barred"). Additionally, "[a]cts occurring outside the limitations period that are significantly far apart from each other are 'fatal' to a continuing violation argument." <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 766 (2d. Cir. 1998) (holding plaintiff could not assert a continuing violation when there was a three-year gap in time from one allegation to the next). In the instant case, Plaintiff's allegations from 2016 and 2017 are "significantly far apart" from the denial of his Summer 2019 Vacation Requests. (<u>See</u> Ex. H at 2-3.) Thus, this significant time gap, alone, is a sufficient basis for finding no continuing violation. <u>Quinn</u>, 159 F.3d at 766.

Consequently, with respect to Plaintiff's discrimination and retaliation claims, the events alleged to have occurred prior to May 14, 2019 are discrete acts, not actionable independently, and time-barred. As a result, the only remaining claims are those involving the denial of Plaintiff's Summer 2019 Vacation Requests.


[Remainder of page intentionally left blank.]

   2.  Consideration of Plaintiff's Timely
       Discrimination Claims and Retaliation Claims

    With respect to Plaintiff's only timely allegation --
the denial of his Summer 2019 Vacation Requests -- Plaintiff fails
to establish a prima facie case of discrimination or retaliation.
Therefore, as a matter of law, Defendants are entitled to summary
judgment.  The Court explains its decision, below.

    Employment discrimination claims are analyzed under the
well-known burden-shifting framework established by the Supreme
Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
See Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010);
Holcomb, 521 F.3d at 138.  That framework requires a plaintiff to
first establish a prima facie case of discrimination.  Holcomb,
521 F.3d at 138.  To establish a prima facie case of
discrimination, a plaintiff must show: "(1) he is a member of a
protected class; (2) he was qualified for the position he held;
(3) he suffered an adverse employment action; and (4) the adverse
action took place under circumstances giving rise to [an] inference
of discrimination."  Reynolds v. Barrett, 685 F.3d 193, 202 (2d
Cir. 2012) (quoting Ruiz, 609 F.3d at 491–92).

    Similarly, retaliation claims are subject to the
McDonnell Douglas burden shifting framework.  See Hicks v. Baines,
593 F.3d 159, 164 (2d Cir. 2010).  To make out a prima facie case
of retaliation, a plaintiff must establish: "'(1) participation in

a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Id. (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).)

Plaintiff's discrimination and retaliation claims fail because he is unable to show he suffered any adverse employment action. "An employee suffers an adverse employment action if a 'materially adverse change' in the terms and conditions of his employment takes place." Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 370 (S.D.N.Y. 2005) (quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). There is no definitive rule regarding what types of actions constitute an adverse employment action, see Connor v. N.Y. State Dep't of Corr. Servs., No. 01-CV-0642, 2007 WL 764508, at *4 (E.D.N.Y. Mar. 9, 2007), but an action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities," Galabya, 202 F.3d at 640. "Employment actions that the Second Circuit has deemed sufficiently disadvantageous to constitute an 'adverse employment action' include 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" Cotterell v. Gilmore, 64 F. Supp. 3d 406, 422

39

(E.D.N.Y. 2014) (quoting <u>Beyer v. County of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008)).  Yet, "[d]enials of vacation time are not adverse actions."  <u>Wharton v. County of Nassau</u>, No. 10-CV-0265, 2013 WL 4851713, at *9 (E.D.N.Y. Sept. 10, 2013) (citing <u>Kaur v, N.Y.C. Health & Hosps. Corp.</u>, 688 F. Supp. 2d 317, 332 (S.D.N.Y. 2010)) (additional citations omitted); <u>see also, e.g.,</u> <u>Roff v. Low Surgical & Med. Supply, Inc.</u>, No. 03-CV-3655, 2004 WL 5544995, at *4 (E.D.N.Y. May 11, 2004) ("The denial of a single vacation request, without any indication that there was an absolute prohibition against plaintiff taking any vacation time, is not a material adverse employment action.") (collecting cases); <u>Chin-McKenzie v. Continuum Health Partners</u>, 876 F. Supp. 2d 270, 286 (S.D.N.Y. 2012) (finding denial of requested days off was a "minor annoyance" rather than a "materially adverse" retaliatory act); <u>Nidzon v. Konica Minolta Bus. Solutions, USA, Inc.</u>, 752 F. Supp. 2d 336 (S.D.N.Y. 2010) (denial of vacation time is not an adverse action, where all employees were subjected to the same policy).  Plaintiff does not contend he was never allowed vacation time; indeed, the record evince shows he was granted 12 days off in the Summer 2019, nine of which were vacation days.  (<u>See</u> Ex. O at 2.)  Thus, the denial of five additional vacation days during Summer 2019, especially when it was known that summer was the peak park season, does not constitute an adverse action sufficient to establish either a discrimination or a retaliation claim.

Further, and of significance, even if the denial of Plaintiff's Summer 2029 Vacation Requests did constitute an adverse action, there is no record evidence that the Summer 2019 Vacation Requests denials were motivated by discriminatory animus. Rather, Defendants had legitimate, non-discriminatory reasons for limiting Plaintiff's, and other employees', vacation days during summer, i.e., staffing needs during the busy summer season, in conjunction with the Public Works' preexisting written policy limiting time off for the Parks Department during that season. (Defs. 56.1 Stmt. ¶¶ 37-38; Ex. G.) By definition, application of neutral company policies is a legitimate, non-discriminatory reason for a particular action. See, e.g., Raytheon Co. v. Hernandez, 540 U.S. 44, 55 (2003); see also Sethi v. Narod, 12 F. Supp. 3d 505, 547-48 (E.D.N.Y. 2014) (finding allocating plaintiff paid vacation time in a manner consistent with a neutrally applied company policy is a legitimate, non-discriminatory reason for denying plaintiff's request for additional vacation days); Maitland v. Konica Minolta Bus. Sols. U.S.A. Inc., No. 09-CV-01675, 2016 WL 304884, at *9, *11 (E.D.N.Y. Jan. 25, 2016) (granting summary judgment where plaintiff was denied vacation request pursuant to defendant's policy and was approved to take vacation time later in the month), aff'd sub nom. Maitland v. Konica Minolta Bus. Sols., 691 F. App'x 653 (2d Cir. 2016).

Plaintiff offers no evidence suggesting compliance with Defendants' Vacation Policy was discriminatorily applied. Plaintiff simply alleges he was denied his Summer 2019 Vacation Requests while "other, non-minority, employees have been permitted to take vacation during this time."[8]   (Am. Compl. ¶ 17.)   Such conclusory allegations without any evidence in support is insufficient to raise a genuine issue of material fact precluding summary judgment.   See Pennington, 855 F. App'x at 781 ("The non-moving party is required to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (cleaned up) (quoting Holcomb, 521 F.3d at 137); see also Woodcock v. Montefiore Med. Ctr. Univ. Hosp. of Albert Einstein Coll. of Med., No. 98-CV-4420, 2002 WL 403601, at *6 (E.D.N.Y. Jan. 28, 2002) (granting summary judgment where plaintiff failed to show denial of transfer and vacation requests were motivated by discrimination);[9] F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) ("To defeat a summary judgment motion, the nonmoving party 'must do more than simply show that there is some

---

[8] With respect to his retaliation claim, admittedly, Plaintiff testified there was no causal connection between his September 2017 grievance and Mr. Rini's denial of his Summer 2019 vacation requests.   (See § 50(h) Hr'g Tr. 80:9-24.)

[9] Though Plaintiff's claims in Woodcock were brought pursuant to 42 U.S.C. § 1981, courts use the same standards in Section 1981 cases as applied in Title VII cases.   Id. at *5 (citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000).)

metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'") (citations omitted).

Finally, looking at Plaintiff's other allegations for background, e.g., the Racial Comments Incidents made by his coworkers, also fails to demonstrate discriminatory animus by any decision maker. See Tomassi v. Insignia Fin. Grp., 478 F.3d 111, 115 (2d Cir. 2007) (holding remarks by someone other than decision maker "may have little tendency to show that the decision-maker was motived by the discriminatory sentiment expressed in the remark"), abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009). The alleged comments were made years before the denial of Plaintiff's Summer 2019 Vacation Requests and are therefore "too remote[ ] to support an inference that the adverse action was motivated by racial bias." Howard v. City of N.Y., 602 F. App'x 545, 547 (2d Cir. 2015); see also Haskell v. Kaman Corp., 743 F.2d 113, 120 (2d Cir. 1984) ("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision").

In sum, given the absence of evidence, no reasonable juror could return a verdict for nonmoving Plaintiff. Rather, upon the record presented, as a matter of law, Defendants are entitled to summary judgment in their favor as to Plaintiff's

discrimination and retaliation claims. Accordingly, their Motion is granted with respect to Plaintiff's discrimination and retaliation claims.

### 3. Plaintiff's Hostile Work Environment Claim

To prevail on a hostile work environment claim, a plaintiff must show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." Fox v. Costco Wholesale Corp., 918 F.3d 65, 74 (2d Cir. 2019) (citation omitted). A "[p]laintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). The standard for establishing a hostile work environment is high, see Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003), and a claim cannot be based upon speculative or conclusory allegations. See Thomas v. Bergdorff Goodman, Inc., No. 03-CV-3066, 2004 WL 2979960, at *6-7 (S.D.N.Y. Dec. 22, 2004). "Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work

44

performance.'" Fox, 918 F.3d at 74 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).)

Further, to succeed on his hostile work environment claim, Plaintiff must "demonstrate that []he was subjected to the hostility because of h[is] membership in a protected class." Brennan v. Metro. Opera Ass'n Inc., 192 F.3d 310, 318 (2d Cir. 1999); see also Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (instructing, to establish a claim of hostile work environment under Title VII, one must demonstrate the complained-of conduct occurred because of plaintiff's protected status, e.g., race).

Here, Plaintiff's claims of three allegedly race-based comments in 2016 and 2017 by non-supervisory coworkers, i.e., the Racial Comments Incidents, do not give rise to a hostile work environment claim. A "few isolated incidents of racial enmity," Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986), or a "mere utterance of an . . . epithet which engenders offensive feelings in an employee" is insufficient to establish a hostile work environment, Harris, 510 U.S. at 21 (internal quotation marks and citation omitted). See, e.g., Curcio v. Roosevelt Union Free Sch. Dist., No. 10-CV-5612, 2012 WL 3646935, at *11 (E.D.N.Y. Aug. 22, 2012) ("Comments made at irregular intervals, over such a long period of time, particularly by individuals who did not exercise any direct supervisory authority over plaintiff, cannot serve as

45

the basis of a hostile work environment claim."); Longmire v. Wyser-Pratte, No. 05-CV-6725, 2007 WL 2584662, at *12 (S.D.N.Y. Sept. 6, 2007) (sporadic alleged racist jokes and comments were not sufficient to warrant trial on plaintiff's hostile work environment claim). Moreover, as addressed supra, Plaintiff offers no evidence that he was denied his Summer 2019 Vacation Requests due to his race. Therefore, considering the totality of the circumstances, no reasonable juror could conclude Defendants' conduct created a workplace so "permeated with discriminatory intimidation, ridicule, and insult that [it] [was] sufficiently severe or pervasive to alter the conditions of the [Plaintiff's] employment and create an abusive working environment." Harris, 510 U.S. at 21.

Accordingly, upon the record presented, the Court finds, as a matter of law, Defendants are entitled to judgment in their favor; thus, the Court GRANTS Defendants' summary judgment on Plaintiff's hostile work environment claim, as well.

III. NYHRL Claims

Having dismissed all of Plaintiff's federal claims, in its discretion, the Court declines to exercise supplemental jurisdiction over his remaining state law claims against the Defendants. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it

has original jurisdiction . . . ."); <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims."); <u>One Commc'ns Corp. v. J.P. Morgan SBIC LLC</u>, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims.").[10] Hence, Plaintiff's NYHRL claims against the Defendants are DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

Accordingly, for the reasons stated herein, **IT IS HEREBY ORDERED** that Defendants' Motion (ECF No. 47) is GRANTED; therefore, Plaintiff's discrimination, retaliation, and hostile work environment claims are DISMISSED <u>WITH</u> PREJUDICE, and his NYHRL Claims are DISMISSED WITHOUT PREJUDICE;

---

[10]    Even if the Court were to have retained jurisdiction, for substantially the same reasons it is denying Plaintiff's Title VII claims, it would deny his NYSHRL claims. <u>See, e.g.</u>, <u>Simmons v. Akin Gump Strauss Hauer & Feld, LLP</u>, 508 F. App'x 10, 13 (2d Cir. 2013) (applying same <u>McDonnell Douglas</u> framework to Title VII and NYHRL claims); <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (same).

**IT IS FURTHER ORDERED**, upon entry of Judgment, the Clerk of Court is directed to CLOSE this case; thereafter, copies of this Memorandum and Order and the corresponding Judgment are to be mailed to <u>pro se</u> Plaintiff at his address of record; and

**IT IS FURTHER ORDERED** that the Court, pursuant to 28 U.S.C. § 1915(a)(3), certifies that any appeal from this Order would not be taken in good faith, and, therefore, <u>in forma pauperis</u> status is denied for the purpose of any appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March 28, 2025
          Central Islip, New York